# THE

# CRIMINAL RECORDER.

*March Session*, 1820, *Hon. C. D. Colden, Mayor.*

The People *vs.* Robert M. Goodwin.  *Manslaughter.*

## CASE.

ROBERT M. GOODWIN was arraigned and tried on an indictment for manslaughter, for killing James Stoughton on the 22d day of December, 1819. The facts of the case were as follows : The deceased and the prisoner had a previous dispute, and on the day laid in the indictment, they met each other, by accident, in Broadway. The prisoner, in company with a friend, was walking for pleasure, and carried a sword cane in his hand. As they passed each other, the prisoner turned around and pointed the cane at the deceased, and said, " That is a rascal and a villain," or " There is a coward and a scoundrel." The deceased stopped, turned around, and walked up to the prisoner, who had walked along the course he was going a few steps, and replied, " What is that you say ?" and struck the prisoner with his fist over the shoulder : a scuffle ensued, the prisoner striking the deceased with the but end of the cane over the head two or three times, and the deceased returning the blows with his fist. During the rencounter, the sword or dagger was, either intentionally or by accident, separated from the scabbard, and the prisoner had, at one part of the affray, the blade part in his hand. The deceased retreated about eight paces, and fell ; he was followed up by the prisoner, who continued to strike

*NEW-YORK,*

The People
*vs.*
R. M. Goodwin.

Where the intention is to wound, tho' not to kill, and there is no danger of life or great bodily harm, and death ensue, it may be manslaughter, although the deceased struck the first blow. In a personal rencounter between two; if a dagger fall from the hand of the prisoner, and he was not defending himself from loss of life, or great personal harm, or just apprehension, and

NEW-YORK, the deceased with the handle of the dagger. The scuffle was here terminated; the deceased got up, but immediately fell and expired, and the dagger was found lying at the place where he first fell.

The People *vs.* R. M. Goodwin.

the deceased fall upon it, from a blow or violence by the prisoner, and so received a mortal wound, it may be manslaughter.*

The question was, whether this was manslaughter or not.

*Colden, Mayor,* after recapitulating the principal points of the testimony, and a brief analysis of the law of manslaughter, ruled the following

## POINTS OF LAW:

1st. " The law of homicide, and of course the law of " manslaughter, is the same as it was in this State on the " 19th of April, 1775, so far as it has not been altered by " acts of the legislature, subsequent to the adoption of " the State Constitution. And the Legislature has passed " no act upon the subject that can affect this case, except " in relation to the punishment, which the Jury ought not " to take into consideration."

2d. " If the prisoner intentionally gave the mortal " wound while he was fighting with the deceased, and the " prisoner was not in danger of life or great bodily harm, " the killing may be manslaughter, though death was not " intended, and though the deceased struck the first blow."

3d. " If the dagger fell from the hand of the prisoner, " or he threw it down after it was unsheathed, and he had " used it to beat the deceased, and while the prisoner was " fighting[1] with the deceased ; and if, while the prisoner " continued to fight with the deceased, and the prisoner

"was not necessarily defending himself from the loss of
"life, or great personal harm, or just apprehension there-
"of, the deceased fell upon the dagger in consequence of
"a blow or violence offered by the prisoner, and so receiv-
"ed the mortal wound, it may be manslaughter."

NEW-YORK,
The People
*vs.*
R. M. Good-
win.

4th. "That although the wound be charged in the in-
"dictment to have been given with a weapon held in the
"hand of the prisoner, yet he may be convicted of the
"offence charged in the indictment, though the Jury should
"believe he came to his death in the manner last sup-
"posed."*

*NOTE.—What shall be considered murder, manslaughter, or excusable homicide, is sometimes most difficult to determine. Manslaughter and other species of homicide are very closely allied; the boundaries of each cannot always be distinctly marked. It is often perplexing to the jurist to decide among the numerous and complicated cases of homicide, whether they come within those rules laid down and intended to apply to and govern those respective crimes. Ld. Ray. 143: Kel. 59—66: Ld. Ray. 1485.

There is one important principle that runs through every description of homicide : it is, that every species of killing is supposed to be malicious and felonious—every homicide is *prima facie* murder, and is to be considered as such, until justified, excused, or palliated. Fost. 255 : 4 Blac. Comm. 201. It lays, therefore, upon the prisoner to justify, excuse, or palliate the crime. Ibid. Homicide is either justifiable, excusable, or felonious. Felonious homicide is of two degrees: murder and manslaughter : but herein of the latter.

Manslaughter has been defined to be the unlawful killing of another, without malice either expressed or implied. 4 Comm. 191 ; and therefore there can be no accessaries before the fact. Manslaughter is divided into—

*Vide Counsellor Sampson's Report of Goodwin's Trial, p. 178.

NEW-YO RK

The People
*vs.*
R. M. Good-
win.

1 Voluntary
manslaughter

A voluntary killing, amounting to manslaughter, is where a man is insulted by spitting in his face, pulling his nose, or offering him any other similar indignity, and he immediately kills the aggressor. Kelyng. 135. Taking a stranger in adultery with one's wife, will make the killing but manslaughter, if done in the heat of passion supposed to be excited from that circumstance. Fost. 296. And so it is if two go out in the field by previous agreement, and fight with swords, pistols, or other deadly weapons. 1 Hawk. P. C. 82. But it must be in the heat of blood. 10 St. Tr. 139 : for if it has time to cool, it will be murder. 1 Hale, 452. If two persons fight on a precedent quarrel where the passions 'have had time to cool, and one is killed, as if two persons quarrel over night and fight the next day, or quarrel in the morning and fight in the afternoon, and death ensue, it will be murder and not manslaughter. 9 St. Tr. 22 : Foster, 297 : 1 Roll. 360 : Kelyng. 129. If a person, being provoked, beats another in such a manner as is apparent he only meant to chastise him, and death happen to ensue, it is only manslaughter. 1 Hale, 456 : Fost. 295. It is no more than manslaughter if a man returns home and finds a person in bed with his wife, and in the heat of passion kills him because of the great provocation. Kely. 137. Nor is it murder if A, strikes B, and thereupon B, in the heat of blood, kills A, but only manslaughter, Kely. 135. To kill the assailant to prevent an unlawful arrest, is only manslaughter, Kely. 137. And it was only held manslaughter where a father seeing his son's nose bloody, and on being told by him that he had been beaten by such a boy, ran three-quarters of a mile, and having found the boy, beat him with a small cudgel, whereby he afterwards died. Foster, 294, 295 : Ld. Raym. 1498 : C. Jac. 296 : 1 Hale, 453. Hawk. b. 1. c. 1. p. 125. Where a woman threw a stool at her daughter-in-law and killed her, it was adjudged manslaughter only : although the provocation was very slight, the instrument being an improper one, yet not such a one as might be supposed to produce death. 1 Leach, 368. If two officers arrest a man in his room, and he abuse, threaten, and actually strike them, and arm himself with pistols, declaring he will not be forced from his house, and on high words arising between them, and the officers being struck and provoked, they fall upon him and kill him, they will be guilty of manslaughter only. 6 St. Tr. 195. Fost. 292.

A quarrel between a party of keel-men and soldiers, one of the soldiers drew his sword to protect himself and his comrades from the assaults of the mob, and killed a person, dressed like one of the former, whom he mistook for one of the keel-men, held manslaughter, 1 Leach, 148. And where, after mutual provocation, the deceased and his opponent struggled, and in the course of the contest, the former received his mortal wounds from a knife, which the latter had previously in his hand in use, though the jury found the prisoner guilty of murder, the judges held the conviction wrong, and recommended him for a pardon. 1 Leach, 151. Chitty, C. L. vol. 3. p. 167. If a wife stabs the officer whereby he dies, who is executing an illegal warrant upon her husband, it is the better opinion that the crime is only manslaughter. 1 Leach, 206. See also, Coxe's Rep. 424 : 18 Johns. 187 : 5 City-Hall Rec. 48, 49 : vol. 3, p. 145. vol. 4, 109. vol. 52. 103. vol. 6, 59.

NEW YORK,

The People
vs.
R. M. Goodwin.

It is a fixed principle, that if, from the weapon or the manner of striking, an intention to kill may be collected ; provocation by words only, is not sufficient to make the killing, but manslaughter. Addis, 163.

Passion arising from sufficient provocation, is evidence of the absence of malice, reduces homicide to manslaughter ; but passion without provocation, or provocation without passion, is not sufficient ; and where there is both provocation and passion, the provocation must be sufficient. Addis. 149—162.

Killing by a blow, in mutual conflict, without necessity either for the protection of life, or the possession of house, &c. is manslaughter. If necessary for such purpose, it is homicide in self-defence. Addis, 248.

If one assuming the character of a physician, through ignorance administer medicine to his patient, with an honest intention, and expectation of a cure, but which causes the death of the patient, he is not guilty of felonious homicide. 6 Mass. T. R. 134.

NEW-YORK,